GEORGE RUSSELL ET AL.
*vs.*
OLMER BROS., INC.

Superior Court      New Haven County      File No. 54251

MEMORANDUM FILED OCTOBER 23, 1939.

*FitzGerald, Foote & FitzGerald,* of New Haven, for the Plaintiffs.

*Abraham Zweigbaum,* of New Haven, for the Defendant.

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

WYNNE, J.  When parties have come into court to redress what seems a wrong done them, there should be no basis left for a feeling that there was other than a full, fair and sympathetic consideration given to asserted claims.  The court feels justified in making this observation for two reasons.  First, because the plaintiffs undoubtedly have found hope in the espousal of their cause by competent counsel whose impulses the court approves although failing to agree in their estimate of legal rights. Second, because so long a time has elapsed since the trial that an impression might be given that the evidence is no longer clear in the court's mind.  To answer any misgivings on the latter score, the court desires to make record of the fact that it caused all salient testimony to be transcribed for careful study, so that no such suggested criticism could justly be made.  Also it might well be added that the long delay in finally finishing the case is in no way attributable to the court.

It is conceded that under our law, none of the plaintiffs except the father who purchased the cake, had the right to rely upon an implied warranty.  The *Borucki* case reiterated that and the last session of the General Assembly remedied what many lawyers had come to regard as an archaic anachronism. The Geenty amendment to the sales act was approved June 5, 1939, so that now the warranty in question extends to all members of the buyer's household.

There is no sufficient evidence of any disability or of injury even, to the father, caused by the claimed presence of maggots in the cake, to make necessary further consideration to that part of the case having its concept in contract.  The court is not satisfied that George Russell was made ill in a psychic way and through a revulsion, as perhaps Mrs. Russell was.  There certainly is no tangible basis of this kind upon which to rest his claims.

It therefore seems to the court that the cases of all the plaintiffs must be considered on the single issue of negligence on the part of the defendant.  In final analysis, it seems to the court that the ultimate issue is summed up in the plaintiffs' brief that the "berries *may* have become contaminated by handling, etc," and that the defendant was obliged "to take steps to rid them

of any possible contamination from any source, etc." Let us see whether such a claim is within the reasonable limits of due care.

It is the theory of Dr. Varrone that ova of pin worms had been deposited upon the blueberries by fruit flies which had previously lodged upon excreta and had conveyed infection to the berries. Such a theory is altogether too hypothetical for support in a court where the test is proof rather than specula-tion. It also must be borne in mind that other equally possible hypotheses were not, and of necessity could not, be negatived. That part of the father's malady caused by pin worm infection is not even established as coming from the blueberries. This holds true as to any theorizing that any toxic filth was on the berries and caused part of the illnesses of any of the plaintiffs.

The court is satisfied from the evidence and as a matter of common knowledge, that fruit fly maggots are not, and cannot be, toxic if ingested. This leads to a consideration of the mother's case. It seems quite probable that her acute and sudden gastritis was caused by the realization that she had swallowed parts of maggots. Passing for the moment, the point that there was any degree of negligence involved in the failure to observe the condition by the salesgirl when the cake was sold, it is certainly pertinent to apply to the wife, and to the hus-band, the same due care at the time of serving the cake. Even this is not determinative, however, for it appears in evidence that fruit fly maggots emerge from chrysalides in such a short space of time that in this case they might easily have done so after, and not before, the moment of sale.

Certainly it would be unfair and unjust to hold the defend-ant liable in negligence in a case involving the merchandizing of raw berries as quickly perishable, and as liable to be nature's incubators of maggots, as such berries certainly are. To so hold would be a travesty on businessmen who, for aught that appears, were conducting an establishment properly and with due regard to their own repute and the rights of the consuming public.

It was not shown that there has been established commer-cially any technique in the handling or the rinsing of blue-berries different from that employed by the ordinary housewife. It is the court's opinion based upon common knowledge, that berries are treated by housewives as it was testified, and not refuted, these berries were.

In short, and as a final conclusion, the court finds no evidence to support the rather sweeping allegations of negligence, which, by the way, were so general in their nature that attempt was made to summon in the jobbers of the flour used, before the theory finally relied upon became clear at the trial.

In each of the cases judgment may enter for the defendant.